## 19650

The SOUTH CAROLINA NATIONAL BANK OF CHARLESTON, As Executor of the Last Will and Testament of Urban M. Kennedy, and as Trustee under ITEM IV of said Will, Respondent, v. Anne B. JOHNSON et al., Appellants.

(197 S. E. (2d) 668)

*Messrs. Sinkler Gibbs Simons & Guerard*, and *Grimball and Cabaniss*, of Charleston, *for Appellants*,

*Messrs. Stoney and Stoney,* of Charleston, *for Respondent,*

June 28, 1973.

LEWIS, Justice:

This action involves the construction of the will of Urban M. Kennedy, deceased, particularly Items IV and VI there-

of. Item IV devises a farm in trust for the benefit of the testator's grandchildren during their minority, the land to be sold and the proceeds divided among them when the youngest reaches twenty-one (21) years of age; and Item VI grants to the Executor and Trustee of the will certain powers of sale. The testator died on October 4, 1958 and there are several after-born grandchildren; one died a few hours after birth. The trust property yields very little income and a sale is contemplated. These developments have caused questions to arise as to the rights of after-born grandchildren to share in the trust property devised in Item IV of the will, and the right of the Executor and Trustee to sell such property under the powers granted in Item VI. This action was brought by the Executor and Trustee to have these and related questions resolved.

The items of the will principally involved are as follows:

"ITEM IV: I do give, devise and bequeath unto my Executor and Trustee hereinafter named my farm on John's Island, upon the following uses and trusts, to wit—To hold, manage, control or rent, and the profits arising therefrom to be used for and on behalf of my grandchildren for and during the term of their minority, and when my youngest grandchild shall have reached the age of twenty-one, the said farm on John's Island is to be sold and all monies derived from such sale shall be divided equally between each and every one of my said grandchildren, share and share alike. My Executor and Trustee shall insofar as possible pay over the income from all rents arising from said farm to defray the necessary expenses for the education of each such child until such child shall have reached the age of twenty-one years.

\* \* \* \*

"ITEM VI: I further hereby give and grant unto my Executor and Trustee full power of sale, re-sale, investment and re-investment at any time, and from time to time, in their sole discretion, with or without advertisement, at pub-

lic or private sale, for the purpose of administration and of the distribution of my estate and of the Trust herein created of any and all of my estate, both real, personal and mixed, and wheresoever situate, and do further direct that no purchaser from my Executor or Trustee shall be required to follow the proceeds of any sale made by my Executor or Trustee hereunder."

This appeal is from an order of the lower court holding that (1) the devise in Item IV included after-born grandchildren, (2) the trust created in Item IV is to be distributed when the youngest living grandchild reaches twenty-one; and (3) the trustee is authorized, under Item VI, to sell, for reinvestment, all or any part of the trust property.

The defendants include all of the living children and grandchildren of the testator, consisting of his daughter, Anne B. Johnson, now Mrs. Henry Buist, and her four minor children, including one born subsequent to the death of the testator; and his daughter Caroline K. Black and her three minor children, including one born subsequent to the death of the testator. One male child was born prematurely to Anne B. Johnson Buist and Henry Buist, Jr. on November 16, 1960 (subsequent to the death of the testator), and died several hours after birth, leaving as heirs at law his mother and father. The grandchildren have been made parties individually and as a class consisting of all of the born and unborn grandchildren and other descendants of the testator.

The parties agree that the issues to be decided in this appeal concern (1) the right of after-born grandchildren to share in the devise made under Item IV, (2) the time of vesting of the trust as to each of the beneficiaries, (3) the time of distribution of the trust established under Item IV, and (4) the right of the executor and trustee to sell the property devised under Item IV. These will be disposed of in the order stated.

Question: 1. *The right of after-born grandchildren to share in the devise under Item IV.*

■ This question involves a determination of whether the term "grandchildren" as used in Item IV of the will includes grandchildren born after the death of the testator. The lower court concluded that the devise includes after-born grandchildren, relying upon the principle stated in *Dukes v. Shuler,* 185 S. C. 303, 309, 194 S. E. 817, 820, that "all who answer the description of the class to whom the devise is made at the time the gift vests in enjoyment are entitled to take." Since the gift does not vest in enjoyment until "my youngest grandchild shall have reached the age of twenty-one," the lower court held that the class to whom the devise was made could not close until the time fixed for distribution; therefore, it includes all grandchildren whether living at the death of the testator or born thereafter.

The lower court correctly held that after-born grandchildren were included in the devise in Item IV. *DeVeaux v. DeVeaux,* 1 Strob. Eq. 283.

In DeVeaux the testatrix devised certain property to her son until her grandchildren "arrived at age or marry; then they are to have their portions given them." At the death of the testatrix, she had three grandchildren living. After her death, the son remarried and had eight more children. One of the questions presented was whether the after-born grandchildren were included within the meaning of the term "grandchildren" as used in the will of the testatrix. In concluding that the after-born grandchildren were included, the court reasoned:

"The word 'grand-children' employed in this will, is descriptive of a definite relation between an ancestor and a certain class of his descendants, and is equally applicable to all the descendants who bear that relation. The first set of grandchildren in this case, would not, therefore, be exclusively intended by it, unless, from other parts of the will, it appears that the testatrix designed to apply it to them alone."

There is nothing in Item IV or other provisions of the will to indicate any intention other than that the term "grand-

children" included all those fitting that description. If the testator had intended that the beneficiaries under Item IV be limited to those grandchildren living at the time of his death, it would have been very easy for him to have expressed such intent somewhere in the will. He placed no such limitation. The terms used in the will, given their common meaning, include all grandchildren; and we must assume that the testator intended that they operate according to their meaning. *DeVeaux v. DeVeaux, supra.*

We therefore, conclude that the class of persons intended as beneficiaries under Item IV of the will includes all grandchildren of the testator, whether living at the time of the testator's death or born thereafter.

The decisions in *Robinson v. Harris,* 73 S. C. 469, 53 S. E. 755; *Coogler v. Crosby,* 89 S. C. 508, 72 S. E. 149; *Pippin v. Sams,* 174 S. C. 444, 177 S. E. 659; and *Myers v. Myers,* 2 McCord Eq. 214, cited for the proposition that the term "grandchildren" should be limited to those in being at the time of the death of the testator, involve different factual situations and are not controlling. In those cases the gift was immediate and the share of each was fixed by the number in existence at testator's death. None involved, as here, a definite future time for distribution. This distinction was clearly recognized in the *Myers* case.

Question: 2. *When did the interest of the beneficiaries vest?*

This issue arises because of the death of an after-born grandchild shortly after birth, leaving as his heirs at law his mother and father. The facts giving rise to this issue were not known by counsel until after the decision in the lower court, and is now presented by an amendment to the Transcript of Record. The question to be decided is whether the grandchildren took vested interests, subject to the class opening up to let in subsequent grandchildren; or whether their interest in the estate vested only at the time of distribution. If their interests vested immediately, the devise

to the after-born grandchild, who lived for only a few hours, would not lapse but would pass to his heirs. If the right of the grandchildren to take a vested interest was dependent upon their surviving until the time of distribution, then only those grandchildren surviving at that time would share in the estate.

The interested parties apparently agree that, if after-born grandchildren are included the devise under Item IV, and we have so held, there is no requirement in the will that a grandchild must survive to the time set for distribution in order to take; and that, consequently, an interest vests in each grandchild immediately, subject to the class opening up in order to admit after-born grandchildren. We think that this construction is correct.

The question is properly resolved in the light of the principle that the law favors the vesting of estates at the earliest time possible and, whenever there is doubt as to whether an interest is vested or contingent, the court will construe it as vested. *Black v. Gettys,* 238 S. C. 167, 119 S. E. (2d) 660.

Accordingly, if there is nothing in the will to indicate that vesting of the estate is to be postponed, it will be construed as vesting immediately.

While a different factual situation was involved, the Court in *Dukes v. Shuler, supra,* 185 S. C. 303, 194 S. E. 817, stated the applicable legal principles:

"It is always necessary to discriminate between a devise which vests immediately, the enjoyment of which is postponed; and a devise which is contingent, because both the vesting in interest and the enjoyment are postponed. In both cases, all who answer the description of the class to whom the devise is made at the time the gift vests in enjoyment are entitled to take. But in the first case the period of survivorship is ascertained at the death of the testator; the class opening to let in all who are born subsequently and prior to the time of distribution. In the second case, the period of sur-

vivorship is ascertained at the time the gift is to be distributed, and all those who die before that time are completely cut out, since their interest is contingent on surviving until the period of distribution."

Under Item IV, there was an immediate gift of the income from the trust to the grandchildren pending a final division "when my youngest grandchild shall have reached the age of twenty-one." Further, the testator directed that the proceeds from the eventual sale of his farm on John's Island "shall be divided equally between each and every one of my said grand-children, share and share alike." No condition of survivorship is imposed. Instead, the language clearly indicates an intention of the testator that all of his grandchildren shall share in the devise, without limitation or restriction. The gift to the grandchildren was not uncertain, or contingent on their reaching twenty-one, but only the complete enjoyment was postponed. Under these circumstances, the grandchildren took a vested interest in the estate at the death of the testator; the class opening to let in subsequently born grandchildren who took vested interests as they were born.

Question: 3. *When is the trust created under Item IV distributable?*

The controlling language of the will is the following provision in Item IV:

". . . and *when my youngest grandchild shall have reached the age of twenty-one,* the said farm on John's Island is to be sold and all monies derived from such sale shall be divided equally between each and every one of my said grandchildren, share and share alike." (Emphasis added).

The grandchildren in being at the death of the testator contend that the foregoing limitation should be construed to mean that the trust is distributable "when the youngest child in being at the time of the execution of the will reaches the age of twenty-one." While the after-born grandchildren adopt the view that distribution is proper when all grandchildren then living have attained the age of twenty-one.

As pointed out in the discussion of this question in Restatement of the Law of Property, Section 295, Comment K, in addition to the possible constructions of the present limitation advanced by the parties, it might logically be construed to authorize distribution "when the person who was the 'youngest' of those in the group on the effective date of the conveyance attains the stated age"; or that distribution must be postponed until the death of the person whose children are in question, because one cannot be sure that the "youngest" of the grandchildren has attained the stated age until the possibility of the birth of further grandchildren becomes impossible.

Restatement, after examining the possible constructions of such a limitation, as is here involved, and soundly eliminating the others, adopts the construction, generally followed, that the estate is distributable "when all members of the class then living have attained the stated age," unless a contrary intent is found from additional language or circumstances. See also: Powell on Real Property, Vol. 3, Section 364, page 179, where the identical construction is followed.

The foregoing view was apparently early adopted in this State in *DeVeaux v. DeVeaux*, 1847, *supra*, 1 Strob. Eq. 283, where it was stated:

"With various fluctuations in the progress of adjudication, not necessary to be noticed here, the authorities have settled down in the result, that where the bounty is given to classes by description, and not by designation, all of the beneficiaries described in the instrument, *in esse* at the time fixed for distribution, shall be entitled to distribution then, in exclusion of those who come into being afterwards, though answering to the description as well as themselves.

\* \* \* \*

"Where, as in this case, a period is assigned for vesting the property in possession, when that period arrives the persons then *in esse* and answering the description, are entitled to

an execution of the will, and to be put in possession of the property; and it can be no reason for delaying the execution, that, by possibility, other persons may come into existence of like description. The will ought to be then executed, according to the rights then existing; and if other persons, suiting the description, shall afterwards come *in esse* and claim participation, their claim cannot be allowed; not because they are not intended by the instrument, but because, by the provisions of the instrument there is no property left for them."

The date assigned by the present will for the distribution of the property is "when my youngest grandchild reaches twenty-one." When the time arrives that there is no living grandchild of the testator under twenty-one, the limitation of the will has been met and the estate is then distributable to those of the class living at that time.

Question: 4. *Does the will empower the trustee to sell the property devised under Item IV for purposes of reinvestment?*

It is conceded that, if the trustee has the power under the will to sell the property devised under Item IV for reinvestment, it must be derived from Item VI which is as follows:

"I further hereby give and grant unto my Executor and Trustee full power of sale, resale, investment and reinvestment at any time, and from time to time, in their sole discretion, with or without advertisement, at public or private sale, for the purpose of administration and of the distribution of my estate and of the Trust herein created of any and all of my estate, both real, personal and mixed, and wheresoever situate, and do further direct that no purchaser from my Executor or Trustee shall be required to follow the proceeds of any sale made by my Executor or Trustee hereunder."

The lower court was in error in concluding that Item VI granted the power to the Trustee to sell the property in Item IV for reinvestment.

An examination of the will reveals that testator's estate, with the exception of certain designated personal property, was disposed of under Items III and IV. By Item III, all the rest, residue, and remainder of the estate of every kind and nature was devised to the trustee, with the exception of the farm on John's Island, "to hold, manage, invest, reinvest, and to pay over the rents, issues and profits thereof" in stated proportions to his wife and sister for their lives. The exception of the farm on John's Island from the trust created in Item III was in the following language: "Save and excepting specifically my farm on John's Island which will be dis-disposed of in a manner hereinafter set forth in one of the paragraphs of this my Last Will and Testament."

The John's Island property was disposed of in the next paragraph (Item IV). This farm was devised to the Trustee "to hold, manage, control or rent," with the profits therefrom to be used for the grandchildren during their minority. Item III stated that the farm on John's Island would be "disposed of" in the manner subsequently set forth, that is, in Item IV; and Item IV directed that the farm be sold only when the youngest grandchild reaches twenty-one.

There is no inconsistency between Items III and IV. The nature of the property held in the respective trusts no doubt dictated the differences in the authority granted to the Trustee. The limitation upon the power of the trustee to sell the farm until the youngest grandchild reaches twenty-one was entirely consistent with the testator's expressed intention that they receive the benefits of the *corpus* of the trust when they became of age. The broad power to "invest and reinvest" granted to the Trustee with reference to the trust under Item III was consistent with his intent to create an income producing trust for the benefit of his wife and sister.

Appellants aptly point out that, if the power of sale granted in Item VI is construed to apply to the trust under Item IV, then Item VI is in direct conflict with the directive in Item IV, which requires the trustee to hold the John's

Island property until the youngest child reaches twenty-one and then only sell for the purpose of distribution. If the provisions of Item VI are so applied, the intent of the testator as expressed in Item IV would be frustrated and the trust there created would be destroyed.

However, Item VI may be construed so as to harmonize with the other provisions of the will and, at the same time, carry out the plain testamentary plan of the testator. Under settled principles, this construction must be adopted. "We cannot consider the will piecemeal; but must attribute due weight to all of its language, giving effect to every part, if under a reasonable interpretation, all of the provisions can be harmonized with each other and with the will as a whole." *King v. S. C. Tax Commission,* 253 S. C. 646, 173 S. E. (2d) 92.

The power of sale is necessary to administer the trust created under Item III. Only the power to sell for distribution is necessary to carry out the expressed intent of the testator under Item IV. Item VI grants a broad, general power of sale, after defining the powers and duties of the trustee as to each trust. There is no apparent reason to construe Item VI as conferring any greater power of sale than was necessary to effectuate the testator's clearly expressed intent with reference to each trust.

We, therefore, construe Item VI as a grant of only such power of sale as the trustee needs to carry out the respective trust as directed by the testator in each instance. Accordingly, the trustee has no authority under Item VI of the will to sell, for reinvestment, the property devised under Item IV; and the lower court was in error in authorizing such sale.

In the event of a holding that the trustee has no authority under the will to sell the property devised under Item IV, the parties have asked that the cause be remanded to the lower court for an evidentiary hearing to determine whether the circumstances are such as to warrant the court, in the

exercise of its equity powers, in ordering a sale of the property for reinvestment. *Ex Parte* Guaranty Bank and Trust Company, 255 S. C. 106, 177 S. E. (2d) 358. Since the lower court held that the sale was authorized under the will, no evidence was adduced as to whether the court would be justified in ordering such a sale. The requested remand for this purpose is proper and is granted.

The judgment is accordingly affirmed, as modified, and the cause remanded to the lower court for further proceedings in accordance with the views expressed herein.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.